**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Leon MILLS, Appellant**

**No. 27 EAP 2016**

Supreme Court of Pennsylvania.

ARGUED: May 10, 2017

DECIDED: June 20, 2017

Karl Baker, Esq., Defender Association of Philadelphia, Emily Lynne Mirsky, Esq., for Leon Mills, Appellant.

Jonathan Michael Levy, Esq., Philadelphia District Attorney's Office, Hugh J. Burns Jr., Esq., for Commonwealth of Pennsylvania, Appellee.

SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.

## *OPINION*

### CHIEF JUSTICE SAYLOR

Appellant, a criminal defendant, challenges the Superior Court's decision to overturn a county court's finding of a violation of the rule-based requirement that he receive a prompt trial.

Rule of Criminal Procedure 600 requires that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). Per the associated computational guidance, periods of delay at any stage of the proceedings caused by the Commonwealth when it has failed to exercise due diligence are to be counted in the 365-day tally. *See id.* 600(C)(1). The rule further directs that "[a]ny other periods of *delay* shall be excluded from the computation." *Id.* (emphasis added). Failure to meet the rule's prompt-trial requirement constitutes grounds for dismissal. *See id.* 600(D)(1).

On June 6, 2011, the Commonwealth filed a complaint against Appellant charging him with a series of crimes arising out of a drive-by shooting, including attempted murder and aggravated assault. A scheduling conference was conducted in September of that year, and trial originally was slated for April 2, 2012. At a status meeting on March 20, 2012, however, per the Commonwealth's request, trial was continued. A prosecutor advised the common pleas court that the Commonwealth was not yet in a position to provide complete discovery, the assigned assistant district attorney had a planned vacation on the then-scheduled trial date, and DNA testing of genetic material from Appellant was contemplated. Trial was rescheduled to September 10, 2012. As of the time of the March 20 conference, about nine and one-half months had passed since the filing of the complaint.

After trial was again continued, Appellant filed a Rule 600 motion to dismiss. In connection with the motion, Appellant conceded that several weeks should be excluded from the 365-day calculation. The parties, however, disputed whether 174 of the days between the filing of the complaint and the status conference should also be excluded. Moreover, given the impact of other aspects of the calculation that are not directly relevant here, the outcome of the dismissal motion turned on whether or not this 174 days was to be included or excluded in the 365-day calculation.

The Commonwealth contended that the time should be excluded. This argument was premised on the notion that Rule 600(C)'s computational instructions, as revised in 2012, radically alter the primary directive that trial is to commence within 365 days. The Commonwealth's position was, in substance, that the instructions afford the prosecution leeway to proceed, without any diligence, to cause up to 365 days of delay in the commencement of any trial.

The common pleas court rejected this position outright and enforced the rule's main directive, awarding the dismissal remedy. On appeal, the Superior Court reversed, however, adopting the Commonwealth's position, *see Commonwealth v. Mills*, No. 929 EDA 2014, *slip op.*, 2016 WL 104533 (Pa. Super. Jan. 8, 2016), which the Commonwealth defends at length in the present briefing.

Appellant, for his part, explains that the Commonwealth's construction of the rule renders it ineffectual. According to Appellant, by attempting to fairly account for "delay" within the contours of the prompt-trial rule, this Court never meant to transform its requirements to effectively toll the 365-day period throughout all periods of ordinary trial preparation. *See, e.g.*, Brief for Appellant at 22–23 ("By the plain language of either the new Rule 600 or its predecessor, there is no 'delay' during the time from a scheduling conference to a status listing[;] . . . [t]he concept of 'delay' refers to the passage of a period of time that is outside of the ordinary, routine and expected passage of time."). Appellant ref-

erences *Commonwealth v. Morgan*, 484 Pa. 117, 398 A.2d 972 (1979), as an opinion of this Court buttressing his position. *See id.* at 123–24, 398 A.2d at 975 ("[A]ny occurrences between the filing of the complaint and the commencement of the trial which did not affect the time in which the trial was commenced . . . [is] not properly considered as a 'delay in the proceedings[.]' ").

 Ordinarily, prompt-trial rulings are reviewed by the appellate courts for an abuse of discretion. *See, e.g., Commonwealth v. Burno*, — Pa. —, —, 154 A.3d 764, 793 (2017). Presently, however, the dispositive question is framed as a legal issue, *see, e.g.*, Brief for Appellee at 1, over which our review is plenary. *See, e.g., In re D.L.H.*, 606 Pa. 550, 563, 2 A.3d 505, 513 (2010).

 Upon review, we agree with Appellant that time attributable to the normal progression of a case simply is not "delay" for purposes of Rule 600. *Accord Morgan*, 484 Pa. at 123–24, 398 A.2d at 975. We realize that, given this Court's holding that periods of judicial delay are excludible from calculations under the rule, *see, e.g., Commonwealth v. Bradford*, 616 Pa. 122, 141, 46 A.3d 693, 705 (2012), courts of original jurisdiction must apply judgment in distinguishing between delay attributable to the court and that which should be allocated to a party.

 These courts also have discretion, however, to differentiate between time necessary to ordinary trial preparation and judicial delay arising out of the court's own scheduling concerns. Accordingly, where a

trial-ready prosecutor must wait several months due to a court calendar, the time should be treated as "delay" for which the Commonwealth is not accountable. Here, however, the Commonwealth does not argue that it was prepared for trial during the 174 days in issue.

Under the Commonwealth's approach, time during which no one is prepared for trial—or even possibly could be ready—is "delay." Such theory is not borne out in any of this Court's decisions, and we find it to be inconsistent with both the letter and spirit of Rule 600.[1]

The order of the Superior Court is reversed and the matter is remanded for reinstatement of the dismissal order.

Justices Baer, Todd, Donohue, Dougherty and Wecht join the opinion.

Justice Wecht files a concurring opinion in which Justices Todd and Donohue join.

Justice Mundy did not participate in the consideration or decision of this case.

JUSTICE WECHT, Concurring

I join the learned Majority in full. I write separately to address the concept of "judicial delay," and to emphasize my view of the correct role that "judicial delay" serves in a Rule 600 analysis.[1]

The Majority notes that, pursuant to this Court's precedents, including our decision in *Commonwealth v. Bradford*, 616 Pa. 122, 46 A.3d 693, 705 (2012), "periods of judicial delay are excludable from calculations" under Rule 600. *See* Maj. Op. at 325. The Majority then explains that trial courts must apply "judgment in distin-

---

1. We do not foreclose the possibility that matters attributable to the defendant during the trial-preparation period could affect the Commonwealth's readiness and, therefore, may impact the calculation. All that is before us presently is a request for a bright-line rule that ordinary trial preparation should always be deemed to be delay and is excludible as a matter of course, and our decision is limited to a rejection of that position.

1. Pa.R.Crim.P. 600.

guishing between delay attributable to the court and that which should be allocated to a party." *Id.* Finally, the Majority astutely observes that trial courts have the discretion to differentiate between the time that passes during the normal progress of a criminal case and the time that elapses when the court's calendar simply cannot accommodate a trial by the relevant date. My concern is that our trial courts too often make these judgments without first considering the Commonwealth's due diligence obligation.

Characterization and delineation of the contested time periods is not always an easy task. Difficulty can arise, as it did in this case, when both "judicial delay" and the Commonwealth's due diligence obligation appear as *options for the court.* However, these two options are not equal, to be selected at the court's discretion. Nor can "judicial delay" be substituted for due diligence. Rather, due diligence must be proven by the Commonwealth, and assessed by the court, before "judicial delay" becomes a consideration in the time calculation for Rule 600.

The Commonwealth bears the burden of proving that it acted with due diligence, *see Commonwealth v. Browne,* 526 Pa. 83, 584 A.2d 902, 908 (1990), and the duty so to act extends to all stages of a criminal case. *See Commonwealth v. Burno,* 154 A.3d 764, 794 (Pa. 2017); *Commonwealth v. Hawk,* 528 Pa. 329, 597 A.2d 1141, 1145 (1991). Subsection (C)(1) of the Rule provides the computational methodology that courts must utilize to determine whether there was a violation of the defendant's speedy trial right. That subsection states that "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of time within which trial must commence. Any other periods of de-

lay shall be excluded from computation." Pa.R.Crim.P. 600(C)(1). This subsection unfortunately is not a model of clarity, as is evidenced by the reasonable debate over the meaning of the term "delay" offered by the parties' briefs in this case. Nonetheless, a linear reading of the provisions requires courts first to consider the Commonwealth's role in causing the delay at issue. Only if the Commonwealth has discharged its duties with due diligence should a court consider other causes for the delay.

Rule 600's comment supports this order of inquiry, noting that Subsection (C)(1) "makes it clear that any delay in the commencement of the trial that is not attributable to the Commonwealth when the Commonwealth has acted with due diligence must be excluded from the computation of time." *Id.* Cmt. Stated differently, the Commonwealth's demonstration that it acted with due diligence at all times is a prerequisite to considering whether the delay was caused by a court's calendar, or by some other form of "judicial delay." "When a case has possible Rule [600] problems, prosecutors must do everything reasonable within their power to see that the case is tried on time." *Commonwealth v. Smith,* 477 Pa. 424, 383 A.2d 1280, 1282 (1978). At a minimum, this well-settled precept requires that, when faced with a court seeking to set a trial date beyond the Rule 600 deadline, the Commonwealth must demonstrate that it has acted with due diligence and must inform the court that the date being contemplated would violate the Rule.

"Judicial delay" is not a mechanism or totem that exempts the Commonwealth from its obligations under the Rule. It may be invoked only after the Commonwealth has demonstrated that it is ready, able, and willing to proceed with the case against the defendant. Otherwise, the due

diligence component of Rule 600 would have little, if any, meaningful import.

Our recent decision in *Bradford* is instructive.[2] The Commonwealth charged Bradford with rape and related offenses, and established a *prima facie* case for those crimes at a preliminary hearing. At that point, the Commonwealth turned over all of its materials to the magisterial district judge ("MDJ"), and kept no other records of the existence of the case. The paperwork got lost, and Bradford remained in jail for over one year without a formal arraignment. The case stood still due to the lost paperwork.

The facts of *Bradford* are undoubtedly distinctive. It is rare indeed when a defendant's case comes to a complete halt without anyone from the prosecutor's office noticing, particularly when the charges are so severe. The peculiarity of the circumstances notwithstanding, this Court engaged in a rather straightforward Rule 600 analysis. As the Majority notes, we recognized "judicial delay" as a concept, and ultimately determined that the delay in Bradford's case was attributable to the judiciary, not to the Commonwealth. *Bradford*, 46 A.3d at 702–05. However, we did so only after finding that the Commonwealth had exercised due diligence by relying upon the MDJ's office to advance the case. *Id.*

The paradigm is consistent under both the terms of the Rule and our Rule 600 jurisprudence. "Judicial delay" is not assessed simultaneously with due diligence. "Judicial delay" becomes relevant only after the Commonwealth has proven its compliance with the due diligence mandate. As the Majority concludes, the Superior Court altered this paradigm. Because the Superior Court's ruling was inconsistent with our Rules and precedents, it must be reversed.

Justice Todd and Justice Donohue join this concurring opinion.

---

**2.** Due to the anomalous circumstances in *Bradford*, it seems unlikely that a case with a similar fact pattern would appear before this Court. After *Bradford*, it can be hoped that Pennsylvania prosecutors no longer rely exclusively upon court systems to advance cases through the criminal justice process, without any internal tracking system.

Nonetheless, if presented with an appropriate record and opportunity, I would reconsider *Bradford*'s due diligence analysis. Under the circumstances of that case, I align more with the discussion offered there by Chief Justice Saylor in his learned dissent. Regardless, the propriety of *Bradford* is not presently before this Court.