J-A14017-24

2024 PA Super 304

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                          :       PENNSYLVANIA
              Appellant               : 
                                            : 
                                            : 
              v.                    : 
                                            : 
                                            : 
DEBORAH STACKHOUSE              :     No. 334 EDA 2023

Appeal from the Order Entered January 18, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  CP-51-CR-0006496-2021

BEFORE:  LAZARUS, P.J., STABILE, J., and LANE, J.

OPINION BY STABILE, J.:                  **FILED DECEMBER 18, 2024**

The Commonwealth of Pennsylvania appeals from the January 18, 2023, order granting Appellee Deborah Stackhouse's ("Appellee") motion to dismiss all charges based upon a violation of the speedy trial rule, Pa.R.Crim.P. 600. In this appeal, we are called upon to review the propriety of the trial court's order granting Rule 600 relief where the Commonwealth was trial ready before the Rule 600 adjusted run date, but nonetheless, had not exercised due diligence throughout the entire life of this case.  Upon review, we reverse and remand for proceedings consistent with this opinion.

On November 21, 2019, Appellee was charged with arson, burglary, causing catastrophe, criminal mischief, criminal trespass, possessing an instrument of crime, recklessly endangering another person, and criminal attempt-murder.  Based upon the charge date, under Pa.R.Crim.P. 600, the Commonwealth was obligated to bring Appellee to trial within 365 days, or by

November 21, 2020. An arrest warrant for Appellee was issued the day she was charged. Two attempts were made to apprehend Appellee, on November 22, 2019, and December 22, 2019. Neither attempt was successful. Appellee was ultimately arrested pursuant to the warrant on July 3, 2021. A preliminary hearing was conducted on July 19, 2021, and the case was held for court. Due to a succession of COVID-19 related administrative orders in the First Judicial District, Rule 600 was suspended from March 17, 2020, until October 1, 2021, thus establishing an adjusted run date of June 6, 2022.

On August 23, 2021, a scheduling conference was held. At that time, the Commonwealth was not trial ready because it had not completed the passing of discovery. A second scheduling conference was held on November 2, 2021, at which time it was determined the Commonwealth again was not trial ready, as it had not yet passed all discovery. A third conference was held on February 2, 2022, by which time discovery had been passed. The court proceeded to schedule trial almost a year later (355 days) for January 23, 2023.[1] The Commonwealth has represented that it was trial ready as of February 2, 2022.

On January 3, 2023, Appellee filed a motion to dismiss based on a violation of Pa.R.Crim.P. 600. Following a hearing and argument held on January 18, 2023, the trial court granted Appellee's Rule 600 motion and

_____

[1] The docket reflects a trial date of January 23, 2023. The court's opinion provides a date of January 18, 2023. We shall use the date found in the trial court docket and orders. Regardless, this minor discrepancy does not affect the disposition of this appeal.

dismissed all charges. The trial court calculated, and the parties agreed, that the adjusted run date for purposes of Rule 600 was June 6, 2022. The trial court, citing **Commonwealth v. Harth**, 252 A.3d 600 (Pa. 2021), found that the Commonwealth was *not diligent throughout the life of the case* and therefore, the Commonwealth could not rely on judicial delay to exclude the period between February 2, 2022, and January 23, 2023, in the Rule 600 calculation. **See** Trial Court Opinion, 8/10/23, at 4-5 (unpaginated). The trial court reasoned,

> **I don't have enough information provided on the record to find that the Commonwealth was duly diligent in passing the discovery over the lifetime of the case.**
>
> In fact, I have evidence to the contrary since discovery was requested prior, even prior to you getting the file. I understand you weren't the assigned [Commonwealth attorney], but someone was assigned. And discovery was requested. It's on the docket. And even if it wasn't requested, it's mandatory discovery. It [is] just standard discovery, a Fire Marshall report. And it wasn't subpoenaed until November 2nd of 2021. **So before we can even address the fact that the [trial court's] EPD wasn't until today, January 18th of 2023, . . . you would have to establish that the Commonwealth was diligent over the lifetime of the case.** And you haven't established that.
>
> * * * *
>
> One of the reasons that I think the Supreme Court has said that we have to establish the diligence before addressing court delay is because in cases like this **when discovery is not passed, it creates an additional delay.**
>
> So follow this logic. If you will just indulge me for a second. . . . If the Commonwealth starts passing discovery in a timely manner, it will enable defense counsel to speak with their clients about that discovery in a timely manner and proceed with full knowledge and full information on how to proceed with their cases.

So for example, if a defendant gets discovery right after the preliminary hearing, that defendant then gets to make an informed decision about whether to enter into a non-trial disposition or a plea, whether to enter into a waiver trial, or whether to proceed with a jury.

And . . . if somebody enters into a non-trial or a waiver trial, the court date is a lot sooner than if they proceed with a jury trial.

. . . [A] lot of times the Commonwealth likes to say this is just court delay. But we all bare responsibility for this delay because of the fact that if they knew what the evidence would show then they can make more informed decisions, and we can bring this to trial sooner. How can you expect somebody to know whether they're going to do a non-trial disposition or whether they want to plea open or negotiated, whether they want to waive or proceed with a jury. How will they know that if they don't even have the discovery to discuss it with their attorneys until a week before trial? So that's why they get these really far our court dates. And that's why it's so important that the discovery is passed sooner because then it wouldn't be a date a year from now if discovery is discussed and the person decides that they want to proceed in a different manner, but that's not even a possibility.

**So I think that's why the Supreme Court puts so much emphasis on showing that . . . the Commonwealth has been diligent throughout the life of the case because it really does matter as far as time calculations. It matters with how people proceed, and it can affect the length of the case.**

N.T. Rule 600 Hearing, 1/18/23, at 53-57 (cleaned up; emphases added).

This appeal followed. Both the trial court and the Commonwealth have complied with Pa.R.A.P. 1925.

On appeal, the Commonwealth raises a sole issue:

Did the [trial] court err by dismissing all charges under Rule 600, where the Commonwealth passed all discovery and was trial-ready well before the adjusted run date, and where trial was only scheduled beyond the adjusted run date due to the [trial] court's own scheduling concerns?

Commonwealth's Brief, at 4.

The Commonwealth does not contest the assessment of delays to it up to the February 2, 2022, scheduling conference. Rather, the Commonwealth contends that the trial court erred by not excluding as judicial delay, the 355-day period from the February 2, 2022, conference to the scheduled trial date of January 23, 2023. Commonwealth's Brief, at 15. The Commonwealth contends "[t]his was a legal error because any lack of diligence on a prior occasion has no bearing on a subsequent period of *judicial* delay – when the Commonwealth is trial-ready *before* that delay begins." **Id.** at 11 (emphasis in original) (citing **Commonwealth v. Mills**, 162 A.3d 323, 325 (Pa. 2017) ("[W]here a trial-ready prosecutor must wait several months due to a court calendar, the time should be treated as "delay" for which the Commonwealth is not accountable.")). We need not consider, nor does the Commonwealth urge us to consider, any period of time other than the 355 days between February 2, 2022, and January 23, 2023, since that period of time is dispositive of the issue whether the trial court properly granted Rule 600 relief.

We begin our analysis with the text of Rule 600 regarding computation of time:

> For purposes of paragraph (A), **periods of delay** at any stage of the proceedings **caused by** the Commonwealth when the Commonwealth has **failed to exercise due diligence** shall be included in the computation of the time within which trial must commence. **Any other periods of delay** shall be excluded from the computation.

Pa.R.Crim.P. 600(C) (emphases added).

- 5 -

It first must be observed that the examination of time within Rule 600 refers to "periods of delay" that must be identified. The rule then establishes two requirements that must be met for Commonwealth delay to count toward the 365-day deadline: (1) the delay must be caused by the Commonwealth; **and** (2) the Commonwealth must have failed to exercise due diligence. ***Commonwealth v. Lear***, --- A.3d ---, 2024 WL 4559236 at *6 (Pa. 2024) (citing ***Commonwealth v. Johnson***, 289 A.3d 959, 982 (Pa. 2023). Other *periods of delay* not resulting from the Commonwealth's lack of due diligence, are excludable and removed from the computation of the Rule 600 deadline. ***Id.***

As stated, we need not examine the periods of delay that occurred prior to the February 2, 2022, conference.[2] As of February 2, 2022, the Commonwealth still had 125 days to bring Appellee to trial. There is no contention that the Commonwealth contributed to or caused any delay from that date to the scheduled trial date of January 23, 2023. The scheduling of the January 2023 trial was made necessary due to the trial court's calendar. The trial court erred in assessing the time between February 2, 2022, and January 23, 2023, against the Commonwealth because the Commonwealth caused no delay during that "period of delay." The rule speaks to periods of delay. That being the case, it would make no sense to attempt to proceed to

---

[2] We do so without condoning the delay caused by the Commonwealth in completing discovery.

the second step in a Rule 600 analysis that inquires whether the Commonwealth *caused* the delay, and if so, if that was the result of it acting without due diligence. Where there is no assertion that the Commonwealth caused delay during a "period of delay," there exists no basis upon which fault for delay can be assessed during that period of delay and attributed to the Commonwealth. The trial court essentially held that the Commonwealth forfeited its right to try Appellee because the Commonwealth caused some inexcusable delay during the life of this case, regardless of when that delay may have occurred. The trial court committed legal error when it assessed its non-concurrent judicial delay after February 2, 2022, against the Commonwealth and dismissed this prosecution.

We now turn to examining the centerpiece of the trial court's reasoning that under **Harth** "the Commonwealth must exercise diligence throughout the life of the case." Trial Court Opinion, 8/10/23 at 4 (unpaginated). The trial court apparently understood this statement to mean that non-concurrent judicial delay always is excused if at any time during the progression of a case the Commonwealth caused delay resulting from a lack of due diligence. Appellee parrots the essence of this argument in her brief.

In **Harth**, our Supreme Court considered whether a trial court may rely upon its own unavailability as justification for denying a defendant's motion to dismiss pursuant to the speedy trial provisions of Pa.R.Crim.P. 600, without first requiring the Commonwealth to demonstrate that it acted with due

diligence in prosecuting the defendant's case. In **Harth**, the defendant moved for Rule 600 relief after the Commonwealth had failed to produce outstanding discovery as of the scheduled trial date of May 23, 2016. The trial court found itself presiding over another criminal trial at that time and continued trial to November 28, 2016. However, on that morning, the Commonwealth presented the defense with a discovery packet that included 15 exhibits that the defense claimed were previously undisclosed. Defense counsel then moved a second time to dismiss pursuant to Rule 600, arguing that the Commonwealth failed to exercise due diligence, as it neglected to share discoverable evidence, despite having such evidence in its possession since early in the case.

The trial court denied the motion explaining that, in its view, the defendant had not shown that the Commonwealth did not exercise due diligence, and noted further, that in any event, even if the Commonwealth was not ready to proceed, it was not "going to hold the Commonwealth responsible," as the court was engaged in other matters which precluded it from holding trial at an earlier date. Harth's trial proceeded, after which he was found guilty of robbery, burglary, and related offenses. Harth appealed his convictions contending that the trial court erred in denying him Rule 600 relief because the Commonwealth's delay in disclosing discovery was not excusable. Discovery was outstanding on the scheduled trial date in May

- 8 -

2016, and remained so in November 2016, when the Commonwealth provided the defense with discovery on the morning of trial.

In a unanimous memorandum, this Court declared that it was unable to calculate the adjusted run date for Appellant's trial, opining that the record was "inconsistent, at best." *Commonwealth v. Harth*, 2019 WL 5212395 unpublished memorandum (Pa. Super. filed October 16, 2019) at \*14. We emphasized that the trial court conducted *no due diligence analysis* with respect to whether the Commonwealth had met its discovery obligations throughout the case, and that it failed to determine when the Commonwealth was legitimately prepared for trial to commence. In light of the perceived shortcomings of the record, we remanded the case to the trial court to conduct a hearing to clarify the cause for every continuance, the Commonwealth's readiness for trial throughout the life of the case, and the Commonwealth's due diligence, or lack thereof. Our Supreme Court granted review, reversed our order, reversed Harth's judgment of sentence, and ordered that he be discharged. The Court found that the record amply demonstrated that the Commonwealth failed to complete discovery through the date of trial – more than 365 days after it filed its complaint in 2015 – and that it failed to prosecute the case with due diligence.

Citing its previous decision in *Commonwealth v. Mills*, 162 A.3d 323 (Pa. 2017), the *Harth* Court embraced the Rule 600 linear methodology described in Justice Wecht's concurrence in *Mills* requiring courts first to

consider the Commonwealth's role in causing the delay at issue, and only after the Commonwealth proves that it acted with due diligence throughout the case should a court consider other causes for delay in bringing a defendant to trial.

*Harth*, 252 A.3d at 617. The Court further agreed with Justice Wecht that

> requiring the Commonwealth to demonstrate that it acted with due diligence before a trial court excludes time from its Rule 600 time computation on the basis of "judicial delay" comports with the language of Rule 600(C)(1) and its commentary, the purpose behind the rule, and its prior jurisprudence interpreting Rule 600 and its predecessor.

*Id.* Citing with approval the comment to Rule 600, the Court also held (with particular importance to our present purposes), that "the Commonwealth is required to demonstrate that it acted with due diligence during a time period *before* that period can be deemed excludable." *Id.* at 617-618 (emphasis in original). In further explanation, the Court concluded accordingly that,

> in ruling on a defendant's Rule 600 motion to dismiss, a trial court must first determine whether the Commonwealth has met its obligation to act with due diligence *throughout the life of the case*; if the Commonwealth meets its burden of proving due diligence, only then may the trial court rely upon its own congested calendar or other scheduling problems as justification for denying the defendant's motion.

*Id.* at 618 (emphasis added).

Recently, our Supreme Court expressed that "*Harth* announced a limited exception to the general rule in cases involving concurrent 'judicial

delay,'"[3] wherein a court may invoke judicial delay to deny a defendant's Rule 600 motion only after the Commonwealth has demonstrated that it complied with the due diligence requirements of Rule 600 at all relevant **periods** throughout the life of the case. *Lear*, --- A.3d --- 2024 WL 4559236 at * 6 (citing *Harth*, 252 A.3d at 603). *Harth* did not hold, as apparently the trial court and Appellee contend, that judicial delay always is excused if the Commonwealth at any time during a case causes delay when acting without due diligence.

The *Harth* Court did not have to analyze any periods of delay. It was self-evident that the Commonwealth was not diligent throughout the life of the case where it was still providing discovery up to the day of trial and the trial date was beyond the time limits under Rule 600. The Rule 600 violation was obvious. As importantly, *Harth* was a case that examined judicial delay *in conjunction with* other periods of delay caused by the Commonwealth - circumstances not present in this appeal.

We reconcile the Court's statement that the Commonwealth is required to demonstrate due diligence during "a time period" with its statement that

---

[3] Not all justices share the view that *Harth* created a limited exception for judicial delay under Rule 600. *See Lear,* --- A.3d --- 2024 WL 4559236 at *14 (J. Wecht, dissenting joined by J. Donohue) ("When we held in *Harth* that any time attributable to 'judicial delay' could occur only after an assessment of the Commonwealth's diligence, we were not creating some limited exception to the rule. To the contrary, we held that courts must follow the path expressly prescribed by the rule.")

- 11 -

the Commonwealth has an obligation to act with due diligence "throughout the life of a case" as follows. It cannot be disputed that the Commonwealth always has the obligation to proceed with a prosecution exercising due diligence so that a defendant may be brought to trial within the time constraints of Rule 600. That does not always happen. Regrettably, delays to commencing trial are not uncommon. However, there is a world of difference between a rule that holds the Commonwealth accountable for periods of delays it causes when acting without due diligence and a rule that would cause the Commonwealth to forfeit its right to bring a defendant to trial due to the taint of an inexcusable delay, no matter how small, that occurs at any time during the life of a case. It must be remembered that,

> an appellate court may not ignore the dual purpose behind Rule 600 and Rule 1013.[4] The Rules serve two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it.

> * * * *

> The Pennsylvania Supreme Court adopted our speedy trial rules as an administrative means of protecting the constitutional rights embodied in the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution. However, the Supreme Court's administrative mandate was neither designed nor intended to insulate a criminal accused from good faith prosecution.

---

[4] Rule 1013 is the speedy trial equivalent of Rule 600 for all proceedings in the Philadelphia Municipal Court.

In the absence of actual misconduct on the part of the Commonwealth specifically calculated to evade the fundamental speedy trial rights of an accused, the applicable speedy trial rule must be construed in a manner consistent with society's right to punish and deter crime.

Dismissing criminal charges punishes the prosecutor. It also punishes the public at large as the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law. In weighing these matters, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused of committing a crime, but also must consider the collective right of the community to vigorous enforcement of the law. Strained and illogical judicial construction adds nothing to our search for justice, but only serves to expand the already bloated arsenal of the unscrupulous criminal determined to manipulate the system.

*Commonwealth v. Preston*, 904 A.2d 1, 9-10 (Pa. Super. 2006) (*en banc*)

(internal citations and quotation marks omitted).

In recognition of these dueling functions, Rule 600 provides both for holding the Commonwealth accountable for its inexcusable delays and conversely, for not penalizing the Commonwealth for delays beyond its control or when it has acted with due diligence. It does violence to these competing functions to construe Rule 600 in a manner that would excuse non-concurrent judicial delays[5] any time the Commonwealth has caused an inexcusable delay, no matter how small, at any time during the progression of a case. If that

---

[5] As compared to concurrent judicial delays which require that a court first inquire whether the Commonwealth has proceeded with due diligence during the applicable period of delay before attributing delay to the court. ***See Harth, supra***.

- 13 -

were so, then even a small inexcusable delay of say seven days at the commencement of a case would cause the Commonwealth to bear the fault of judicial delay any time thereafter and lose its right to prosecute a defendant if judicial delay caused trial to commence beyond the time limits under Rule 600. Not only would that run counter to the purposes and spirit of assessing delay under Rule 600, but such a construction is at variance with the express language of that rule and other of our other cases that require each period of delay to be examined. *See Johnson, supra.*; *see also Commonwealth v. Lapaglia*, 320 A.3d 745, 750-54 (Pa. Super. 2024) (each period of delay analyzed to determine whether the Commonwealth was diligent); *Commonwealth v. Herring*, 271 A.3d 911, 915-19 (same); *Commonwealth v. Mackey*, 2022 WL 500585 unpublished memorandum (Pa. Super. filed February 18, 2022) at *4-5 (same); *Commonwealth v. Simmons*, 2023 WL 6229646 unpublished memorandum (Pa. Super. filed September 26, 2023) at *6 (same); *Commonwealth v. Coleman*, 2024 WL 3858551 unpublished memorandum (Pa. Super. filed August 19, 2024) at *13-14 (same). The Commonwealth's obligation to exercise due diligence throughout the entire course of a case is not repugnant to a rule that does not assess non-concurrent judicial delay against the Commonwealth.

As previously stated, we conclude that under the facts of this case, the trial court erred in assessing the 355 days of judicial delay from the February 2, 2022, conference until January 18, 2023, when it dismissed charges under

Rule 600. It is uncontested that the Commonwealth did not cause trial delay after the February 2, 2022, conference. Judicial delay after that time was responsible for trial scheduling well after the adjusted run date of June 6, 2022. As the Commonwealth correctly notes, "[w]here a trial-ready prosecutor must wait . . .due to a court calendar, the time should be treated as '[judicial] delay' for which the Commonwealth is not accountable." *Mills*, 162 A.3d at 325.

Reversed and remanded for proceedings consistent with this opinion. Jurisdiction Relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date:  12/18/2024