J-S28006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MATTHEW LEMMON | : | |
| | : | |
| Appellant | : | No. 41 MDA 2025 |

Appeal from the Judgment of Sentence Entered November 13, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000667-2023

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:                    **FILED: NOVEMBER 17, 2025**

Matthew Lemmon appeals *pro se* from the judgment of sentence of two years of probation following his conviction of theft by unlawful taking.  We affirm.

As summarized by the trial court, Appellant's single criminal charge "stemmed from an agreement Appellant entered into with Full Circle Music to complete an HVAC project."  Trial Court Opinion, 3/13/25, at 1.  He was charged by criminal information on December 30, 2022.  After initially retaining an attorney, Appellant decided to waive his right to counsel and has since proceeded *pro se*.

On May 30, 2024, Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600.  The court held a hearing on the motion on August 28, 2024.  The charging officer, Detective Roxanne Snider of the Dauphin County Criminal Investigation Division, testified that Appellant was apprehended on

January 3, 2023, and his scheduled preliminary hearing for January 12 was continued because Appellant had not yet hired an attorney. Further, the Deputy District Court Administrator for the Criminal Division of the Dauphin County Court of Common Pleas explained the calendaring process in 2023 and 2024, and provided details regarding the continuances and waivers of Rule 600 in the matter *sub judice*. The court ultimately denied the motion, finding no speedy trial violation and that the Commonwealth had acted with due diligence in prosecuting his case.

The court oversaw a jury trial on September 9 through 11, 2024. During Appellant's cross-examination of Detective Snider, he offered into evidence her police report. The court admitted the exhibit but denied his request to send it with the jury during deliberations. Ultimately, the jurors found Appellant guilty as charged. Thereafter, the court sentenced Appellant as indicated hereinabove. It also imposed restitution in the amount of $37,461.15. Appellant filed a post-sentence motion, which the court denied. This timely appeal followed. Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement.[1] In this Court, Appellant presents two questions for our consideration:

---

[1] We remind the trial court that all Rule 1925(b) orders must provide, *inter alia*, "the address to which the appellant can mail the Statement" and "that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) **shall** be deemed waived." Pa.R.A.P. 1925(b)(3)(iii-iv) (emphasis added).

1. Did the trial court violate Appellant's constitutional right to a speedy trial in denying [Appellant]'s motion to dismiss pursuant to . . . Rule 600?

2. Did the trial court err by not allowing [Appellant] to present a piece of admitted evidence to the jury?

Appellant's brief at 2 (unnecessary capitalization and articles omitted).

Our jurisprudence governing challenges to a court's denial of a Rule 600 motion guides our review of Appellant's first issue:

> Our standard of review in evaluating speedy trial issues is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will discretion is abused.
>
> Our Supreme Court has previously explained that Rule 600 was adopted in order to protect defendants' constitutional rights to a speedy trial under the Sixth Amendment of the United States Constitution and Article I, [§] 9 of the Pennsylvania Constitution, in response to the United States Supreme Court's decision in **Barker v. Wingo**, 407 U.S. 514 (1972). Our Supreme Court has also recognized that Rule 600 has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution in criminal cases. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it.
>
> Turning to its text, Rule 600 requires that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a).

**Commonwealth v. Mullen**, 341 A.3d 799, 803 (Pa.Super. 2025) (cleaned up).

Our Supreme Court has elucidated the parameters for the pivotal analysis in such Rule 600 appeals:

> To decide whether the rule was violated, a court must first calculate the mechanical run date, which is 365 days after the complaint was filed, and then must account for any excludable time. Rule 600 explains the computation of time as follows: "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).
>
> As th[e Supreme] Court unanimously clarified . . ., the first sentence of Rule 600(C)(1) expresses the general rule[ that] Rule 600 establishes two requirements that must be met for delay to count toward the 365-day deadline: (1) the delay must be caused by the Commonwealth; and (2) the Commonwealth must have failed to exercise due diligence. The second sentence of Rule 600(C)(1) then explains that "[a]ny other periods of delay" — meaning any periods of delay not caused by the Commonwealth or not resulting from the Commonwealth's lack of due diligence — are excludable and are removed from the computation of the Rule 600 deadline. Pa.R.Crim.P. 600(C)(1). Once the excludable time is calculated, this time is added to the mechanical run date to produce the adjusted run date, which is the deadline for the Commonwealth to bring the defendant to trial under Rule 600.

*Commonwealth v. Lear*, 325 A.3d 552, 560 (Pa. 2024) (cleaned up).

However, "time attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600." *Commonwealth v. Mills*, 162 A.3d 323, 325 (Pa. 2017) (cleaned up). Thus, the trial court must "differentiate between time necessary to ordinary trial preparation and judicial delay arising out of the court's own scheduling concerns. Accordingly, where a trial-ready prosecutor must wait several months due to a court calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable." *Id*.

The High Court has further delineated the rules for periods of judicial delay, which "is delay caused by an individual judge's own congested calendar or other scheduling problems." **Lear**, 325 A.3d at 562 (cleaned up). Such delay may only be deemed excludable by a trial court "after the Commonwealth has demonstrated that it complied with the due diligence requirements of Rule 600 at all relevant periods throughout the life of the case." **Id**. at 561–62 (cleaned up).

As noted, Appellant was charged on December 30, 2022, and his jury trial began on September 9, 2024. His mechanical run date for Rule 600 purposes was December 30, 2023. Since that was a Saturday, and the next business day was a holiday, 1 Pa.C.S. § 1908 dictates that the mechanical run date was January 2, 2024. **See** 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation."); **Commonwealth v. Speed**, 323 A.3d 850, 857 n.8 (Pa.Super. 2024) (applying § 1908 to the mechanical run date in Rule 600 calculations). In order "to obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion to dismiss the charges." **Commonwealth v. Jones**, 886 A.2d 689, 699 (Pa.Super. 2005) (cleaned up). Appellant filed his Rule 600 motion on May 30, 2024, nearly five months past his mechanical run date.

Here, in determining whether Appellant's right to a speedy trial had been violated, the trial court made the following findings based upon the testimony

and evidence presented at Appellant's Rule 600 hearing. First, Appellant's preliminary hearing was rescheduled from January 12, 2023 to February 16, 2023, to allow him the opportunity to retain legal counsel. On February 16, 2023, Appellant waived his preliminary hearing and formal arraignment, and the charge was bound over to the court of common pleas. Despite retaining counsel, Appellant advised the court in May 2023 that he was likely going to proceed *pro se*. The matter was continued from July 24, 2023, to August 28, 2023, because Appellant began to represent himself and needed time to review discovery. Accordingly, the court attributed that delay to Appellant. On August 28, 2023, the matter was continued to October 30, 2023, and that period was attributed to Appellant as he wished to proceed to a trial in lieu of accepting the Commonwealth's offers. Unfortunately, Appellant's case was not prioritized for the October trial term, and therefore the court charged the ensuing setback to December 11, 2023, as judicial delay.

At the December court date, the Commonwealth asked for a continuance. The subsequent months were plagued by more administrative delays. No juries were available during the January, March, or April 2024 trial terms. The case was finally listed for jury selection in May, but no judges were available. The matter was then listed for the August trial term, but was removed as a result of the instant Rule 600 motion.

Appellant argues that the trial court failed to outline its Rule 600 calculations and that the Commonwealth did not meet its burden of proving that it exercised due diligence throughout the pendency of his case. ***See***

Appellant's brief at 9-10. Specifically, he claims that the court misapplied the burden of proof for the Commonwealth's diligence, accepting a lack of evidence to the contrary as positive evidence of due diligence. *Id*. at 11-12. He further maintains that much of the time cited by the Commonwealth at the Rule 600 hearing was not excludable because it merely amounted to the normal progression of a case. *Id*. at 9-10. Finally, he challenges the attribution of the July 24 and August 28, 2023 continuances to him. *Id*. at 13.

Appellant's thirty-five-day preliminary hearing continuance to obtain counsel was attributable to him and moved the adjusted run date to February 6, 2024.

On June 23, 2023, Appellant confirmed his *pro se* status, received discovery from the Commonwealth, and sought an opportunity to review it. Therefore, the court continued the case until August 28, 2023. This extension was reflected in the July 24, 2023 court action sheet, which denoted that Rule 600 was waived. When the parties reconvened in August, the Commonwealth explained that Appellant had rejected its offers and he wanted to proceed to trial, so the court listed it for the October trial term. This continuance was listed as a defense continuance on the court action sheet, and again stated that Rule 600 was waived. Although the notes of testimony are silent as to Rule 600 waiver, the court sheets plainly reveal that Rule 600 was waived, and the hearings confirm that the continuances were for Appellant's benefit. Moreover, Appellant did not object to the court's taking of judicial notice of

these court sheets that had been filed of record, nor did he contest their accuracy at the Rule 600 hearing. Based on the foregoing, the court properly excluded these continuances, which accounted for an additional ninety-eight days, and resulted in a new adjusted run date of May 14, 2024.

As set forth, the trial court determined that the scheduling delays for the matter not being prioritized or the lack of a judge or jury should be excluded as judicial delay. In doing so, it found that "there [wa]s nothing to suggest the Commonwealth employed anything less than due diligence in an effort to bring this case to trial." Trial Court Opinion, 3/13/25, at 4. The court found that "[b]oth sides have been ready . . . to try this case for months" but "based on other concerns were unable to have it go to trial[,]" noting specifically the overburdened court calendars. *See* N.T. Rule 600 Hearing, 8/28/24, at 47.

The court administrator testified that he applied varying priority rankings to the matter *sub judice* for the October 2023 and January, March, April, and May 2024, trial terms, and either the jury pool ran out before reaching Appellant's case or, when it was finally listed for a jury in the May term, no judge was available. Contrary to Appellant's assertion, such occurrences are not part of "ordinary trial preparation." *Mills*, 162 A.3d at 325 (cleaned up). Rather, we conclude that the postponements resulting from the lack of a jury or judge on the numerous trial listings were properly characterized by the trial court as "delay caused by an individual judge's own

congested calendar or other scheduling problems." ***Lear***, 325 A.3d at 562 (cleaned up).

Therefore, these judicial delays will be deemed excludable so long as the Commonwealth met its burden of establishing that it acted with due diligence throughout the pendency of Appellant's case.[2] ***See Commonwealth v. Harth***, 252 A.3d 600, 618-19 (Pa. 2021) (reiterating that the burden of proof is upon the Commonwealth to establish it acted with due diligence and that an appellate court may review the sufficiency of the Commonwealth's evidence *de novo*, in the interest of judicial economy, if the trial court applied an incorrect standard). Upon review, we conclude that the court's assessment that the Commonwealth acted with due diligence throughout its prosecution of Appellant is supported by the record. During this case, the Commonwealth only asked for one continuance. As it argued at the close of the Rule 600 hearing, apart from that single request, "the Commonwealth has been ready to proceed with [the case and it was] merely a matter of judicial availability and jury selection availability that we have been unable to get this case tried." N.T. Rule 600 Hearing, 8/28/24, at 46. The Commonwealth did not need to adduce more evidence to sustain its

---

[2] Specifically, the matter was continued from October 30, 2023 to December 11, 2023. The Commonwealth asked for a continuance from December 11, 2023 to January 29, 2024. Of course, that gap is not excluded. Next, the case was delayed from January 29 to March 11, 2024; then from March 11 to April 15, 2024; April 15 to May 20, 2024; and finally May 20 to August 12, 2024.

burden of establishing that it acted with due diligence in prosecuting this case, as it demonstrated that save for one continuance request, it was ready to proceed, and the delays pertaining to the availability of juries and judges were outside its control. Thus, excluding the 238-day timespan for judicial delays, the adjusted run date became January 7, 2025, roughly four months after trial commenced.

Based on the foregoing, the trial court's findings are supported by the record and it did not abuse its discretion in denying Appellant's Rule 600 motion. Thus, he is not entitled to relief on this claim.

Turning to Appellant's final issue, he argues that the court erred in not allowing the jury during deliberations to examine the police report that Appellant used to cross-examine Detective Snider. Specifically, he claims that "withholding it from the jury did not allow it to possibly raise doubt in the truthfulness of witness testimony." Appellant's brief at 15 (some capitalization altered).

We review the trial court's decision of whether to give admitted evidence to the jury during deliberations for an abuse of discretion. *See* ***Commonwealth v. Bango***, 685 A.2d 564, 565 (Pa.Super. 1996). Pennsylvania Rule of Criminal Procedure 646 governs what materials may be sent with a jury, and provides in pertinent part:

> (A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).
>
> . . . .

- 10 -

(C) During deliberations, the jury shall not be permitted to have:

(1) a transcript of any trial testimony;

(2) a copy of any written or otherwise recorded confession by the defendant;

(3) a copy of the information or indictment; and

(4) except as provided in paragraph (B), written jury instructions.

Pa.R.Crim.P. 646. In previously applying this rule to the precise context presently before us, we reiterated that because police reports are not specifically excluded, "[w]hether to allow the jury to review the police report during its deliberations was thus left to the discretion of the trial judge." *Commonwealth v. Creary*, 201 A.3d 749, 753 (Pa.Super. 2018) (cleaned up).

Here, the trial court explained that it admitted the report as an exhibit during Appellant's cross-examination of the detective, and he asked her questions based upon the exhibit. However, the court determined over Appellant's objection that the report would not go with the jury to deliberations, but it would make it available to the jurors if requested. *See* Trial Court Opinion, 3/13/25, at 6.

Our review of the record confirms that the court admitted the police report as Defense Exhibit 3 during Appellant's cross-examination of Detective Snider. *See* N.T. Trial, 9/9-11/24, at 266. He then asked the detective to review the narrative to see whether it would change any of her prior answers to his questions, and she testified that it was consistent with her testimony.

- 11 -

*Id*. at 267. The Commonwealth, on re-direct, had her explain how her report was created. *Id*. at 279-80. After the jury retired, the court met with the Commonwealth and Appellant to determine which pieces of evidence would be sent back to the jury room. The Commonwealth objected to the police report being provided to the jury because it was only used for impeachment purposes. *Id*. at 435. Appellant asked that it be sent with the jury so they could have "the facts of the matter that were used in the arrest." *Id*. The court disagreed, concluding that it generally did not provide police reports to juries, but "[i]f they ask to see it, we certainly will make it available to them." *Id*. The jury reached its verdict without asking to see the report.

As explained by this Court in *Creary*: "The recognized reason for excluding certain items from the jury's deliberations is to prevent the jury from placing undue emphasis or credibility on the material sent back with the jury, and de-emphasizing or discrediting other items not in the room with the jury." *Creary*, 201 A.3d at 753–54 (cleaned up). Here, the court instructed the jury to "pay close attention to everything that's said and done here in the courtroom so [it] can perform [its] duties well." N.T. Trial, 9/9-11/24, at 54. Moreover, Appellant referenced the report during his cross-examination, and explained that he was using it to give the detective an opportunity to correct her testimony if anything was incorrect, but she testified that she believed it supported her testimony, and Appellant agreed. *Id*. at 267. Finally, the court ruled that if requested, it would allow the jury to review the report.

Accordingly, we find no abuse of discretion on the trial court's part in deciding not to send the police report with the jury to the deliberation room.

Based on the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/17/2025